22-35497

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

KODIAK BLAINE, *et al.*,
Plaintiffs-Appellants,

v.

BENEFIS HEALTH SYSTEM, INC., *et al.*,
Defendants-Appellees.

_____

Appeal from the Judgment of the United States District Court
for the District of Montana, Great Falls Division
D.C. No. 4:21-cv-00092-BMM
The Honorable Brian M. Morris

_____

DEFENDANTS-APPELLEES BENEFIS HEALTH SYSTEM, INC.,
BENEFIS HOSPITALS, INC., BENEFIS MEDICAL GROUP, INC.,
AND KALISPELL REGIONAL MEDICAL CENTER, INC.'S
CONSOLIDATED ANSWERING BRIEF

_____

David M. McLean
Ryan C. Willmore
MCLEAN & ASSOCIATES, PLLC
3301 Great Northern Ave., Suite 203
Missoula, MT 59808
Telephone: (406) 541-4440
Facsimile: (406) 540-4425
dave@mcleanlawmt.com
ryan@mcleanlawmt.com

Charles E. Weir
Sarah E. Moses
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224
CWeir@manatt.com
SMoses@manatt.com

*Attorneys for Defendants-Appellees Benefis Health System, Inc., Benefis Hospitals, Inc., and Benefis Medical Group, Inc.*

Gary M. Zadick
UGRIN ALEXANDER ZADICK, P.C.
#2 Railroad Square, Suite B
P.O. Box 1746
Great Falls, Montana 59403
Telephone: (406) 771-0007
Facsimile: (406) 452-9360
gmz@uazh.com

*Attorneys for Defendant-Appellee Kalispell Regional Medical Center, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, counsel for Defendants-Appellees Benefis Health System, Inc., Benefis Hospitals, Inc., Benefis Medical Group, Inc., and Kalispell Regional Medical Center, Inc. make the following statement identifying any parent corporation or any publicly held corporation that owns 10% or more of the stock of each respective entity.

Benefis Health System, Inc. is a non-profit corporation, has no parent corporations, and no publicly traded company owns 10% or more of its stock. Benefis Hospitals, Inc. and Benefis Medical Group, Inc. are wholly owned subsidiaries of Benefis Health System, Inc.

Kalispell Regional Medical Center, Inc. is a non-profit corporation. Its sole member is Logan Health.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................3

I.      INTRODUCTION ...................................................................10

II.     STATEMENT OF JURISDICTION .............................................12

III.    STATEMENT OF ISSUES PRESENTED ...................................12

IV.     STATEMENT OF THE CASE ....................................................14

        A.      The Parties ...................................................................14

        B.      Plaintiffs Brought Suit Against Defendants Challenging
                Defendants' Billing and Lien Practices.............................14

        C.      Procedural History.........................................................17

                1.      Defendants Moved to Dismiss the SAC Because
                        Plaintiffs Lack Standing to Pursue Their Claims ...................17

                2.      Plaintiffs' Opposition Relied on Boilerplate Causation
                        and Harm Allegations, and Non-Existent "Factual"
                        Disputes.................................................................18

                3.      Defendants' Reply Reinforced Plaintiffs' Lack of Injury .......19

                4.      The District Court Agreed With Defendants and
                        Dismissed the SAC on Standing Grounds ...............................20

                5.      Plaintiffs' Opening Brief Attempts to Rewrite Their SAC .....22

V.      SUMMARY OF ARGUMENT....................................................23

VI.     STANDARD OF REVIEW ........................................................25

VII.    ARGUMENT............................................................................26

        A.      The District Court Correctly Dismissed the SAC Because
                Plaintiffs Lack Standing to Bring Their Claims................................26

                1.      Plaintiffs Paid Nothing for Their Medical Care ......................27

                2.      Under Montana Law, Plaintiffs Have No Property
                        Interest in Payment Rates in Hospital Contacts or
                        Government Programs .............................................................29

                3.      Montana Statutes Authorize the Hospitals to File the
                        Liens For Undiscounted Rates..................................................34

# TABLE OF CONTENTS
(continued)

**Page**

B.      Plaintiffs Fail to Address or Distinguish Defendants' Authority.......37

C.      Plaintiffs' Other Standing Arguments Are Unavailing.....................40

     1.      Plaintiffs Do Not Identify an Injury-In-Fact...........................40

     2.      None of Plaintiffs' Purported Additional Theories of Liability Survive the Basis for Dismissal ...............................42

     3.      The Liens Do Not Constitute An Assignment of Plaintiffs' Personal Injury Claims.............................................47

     4.      Plaintiffs Cannot Invoke the "Made Whole" Doctrine...........48

     5.      There Is No Factual Dispute About the "Reasonable Value" of the Hospitals' Services .............................................49

D.      The District Court Applied the Correct Standard .............................52

E.      The District Court Correctly Dismissed the SAC Without Leave to Amend ........................................................................................53

VIII.    CONCLUSION.............................................................................................54

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bell Alt. v. Twombly*,
   550 U.S. 544 (2007)...............................................................29

*Blanton v. Dep't of Pub. Health & Hum. Servs.*,
   255 P.3d 1229 (Mont. 2011)..................................................33

*Cigna Property and Cas. Ins. Co. v. Polaris Pictures Corp.*,
   159 F.3d 412 (9th Cir. 1998) ................................................26

*Conway v. Benefis Health Sys.*,
   297 P.3d 1200 (Mont. 2013)..........................................*passim*

*Daniel v. Nat'l Park Serv.*,
   891 F.3d 762 (9th Cir. 2018) ................................................19

*Doğan v. Barak*,
   932 F.3d 888 (9th Cir. 2019) ................................................25

*Duck Inn, Inc. v. Mont. St. Univ.*,
   949 P.2d 1179 (Mont. 1997)..................................................48

*E. Bay Sanctuary Covenant v. Biden*,
   993 F.3d 640 (9th Cir. 2021) ................................................26

*Estate of Donald v. Kalispell Regional Medical Center*,
   258 P.3d 395 (Mont. 2011).............................................*passim*

*Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*,
   357 F.3d 1266 (Fed. Cir. 2004) ............................................54

*Foster v. Wilson*,
   504 F.3d 1046 (9th Cir. 2007) ..............................................52

*Gibson v. United States*,
   499 P.3d 1165 (Mont. 2021)..................................18, 31, 50

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018).........................................................26

*Godecke v. Kinetic Concepts, Inc.*,
   937 F.3d 1201 (9th Cir. 2019) ..............................................26

*Hardy v. Progressive Specialty Ins. Co.*,
   67 P.3d 892 (Mont. 2003).....................................................48

# TABLE OF AUTHORITIES

(continued)

**Page**

*Harris v. St. Vincent Healthcare*,
　305 P.3d 852 (Mont. 2013)............................................................................*passim*

*Howard v. Willis-Knighton Med. Ctr.*,
　924 So. 2d 1245 (La. Ct. App. 2006).................................................................51

*In re Apple iPhone Antitrust Litig.*,
　2013 WL 4425720 (N.D. Cal. Aug. 15, 2013) ...................................................17

*In re N. Cypress Med. Ctr. Operating Co., Ltd.*,
　559 S.W.3d 128 (Tex. 2018) ..............................................................................51

*Jennings v. Stephens*,
　574 U.S. 271 (2015)............................................................................................52

*Kokkonen v. Guardian Life Ins. Co. of America*,
　511 U.S. 375 (1994)............................................................................................26

*Lacano Invs., LLC v. Balash*,
　765 F.3d 1068 (9th Cir. 2014) ...........................................................................53

*Leite v. Crane Co.*,
　749 F.3d 1117 (9th Cir. 2014) ...........................................................................52

*Los Angeles Unified Sch. Dist. v. Bank of Am. Corp.*,
　2015 WL 13653868 (C.D. Cal. Jan. 7, 2015)...............................................27, 35

*Lujan v. Defenders of Wildlife*,
　504 U.S. 555 (1992)......................................................................................26, 29

*M & T Bank v. SFR Invs. Pool 1, LLC*,
　963 F.3d 854 (9th Cir. 2020) .......................................................................25, 53

*Meek v. Mont. Eighth Judicial Dist. Court*,
　349 P.3d 493 (Mont. 2015)......................................................................49, 50, 51

*Morgan v. St. Luke's Hospital of Kansas City*,
　403 S.W.3d 115 (Mo. Ct. Apps. 2013).........................................................*passim*

*Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*,
　184 P.3d 1021 (Mont. 2008)..........................................................18, 25, 29, 30

*Northland Cas. Co. v. Mulroy*,
　2016 WL 1322428 (D. Mont. Mar. 31, 2016) ...................................................47

*Novato Fire Protection Dist. v. United States*,
　181 F.3d 1135 (9th Cir. 1999) ...........................................................................38

# TABLE OF AUTHORITIES
(continued)

**Page**

*Papasan v. Allain*,
478 U.S. 265 (1986)..................................................................29

*Parkview Hosp., Inc. v. Frost ex rel. Riggs*,
52 N.E.3d 804 (Ind. Ct. App. 2016) ..................................51

*Skauge v. Mt. States Tel. and Tel. Co.*,
565 P.2d 628 (Mont. 1977)..................................................48

*Spokeo Inc. v. Robins*,
578 U.S. 330 (2016)...................................................*passim*

*Swanson v. Hartford Ins. Co.*,
46 P.3d 584 (Mont. 2002).....................................................48

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021)..........................................................45

*United Petro/Energy Corp. v. United States*,
846 F. Supp. 993 (S.D. Fla. 1994)......................................54

*Van Orden v. United Servs. Auto. Ass'n*,
318 P.3d 1042 (Mont. 2014)..........................................48, 49

*Van v. LLR, Inc.*,
962 F.3d 1160 (9th Cir. 2020) ............................................26

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)..............................................................38

*Walker v. Beard*,
789 F.3d 1125 (9th Cir. 2015) ............................................53

## STATUTES

28 U.S.C. § 1291 ...............................................................................12

28 U.S.C. § 1331 ...............................................................................12

28 U.S.C. § 1332(d)(2)......................................................................12

Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* .........*passim*

Mont. Code Ann. § 27-1-320, *et seq*...............................................16

Mont. Code Ann. § 27-1-712, *et seq*...............................................16

Mont. Code Ann. § 28-1-211 ............................................................16

Mont. Code Ann. § 30-14-101 ..........................................................16

# TABLE OF AUTHORITIES
(continued)

**Page**

Mont. Code Ann. § 33-1-110.................................................................25, 36, 39

Mont. Code Ann. § 33-1-110(2) ...........................................................20, 35, 36

Mont. Code Ann. § 33-1-202(3) ..........................................................................36

Mont. Code Ann. § 33-1-206(1)(a)......................................................................36

Mont. Code Ann. § 33-1-206(1)(b)......................................................................36

Mont. Code Ann. § 71-3-1114.............................................................................25

Mont. Code Ann. § 71-3-1114(2) ........................................................................39

Mont. Code Ann. § 71-3-1114(2)(a)....................................................................34

Mont. Code Ann. § 71-3-1114(2)(b)...............................................................34, 35

Mont. Code Ann. § 71-3-1115(2) .................................................................17, 35, 45

Mont. Code Ann. § 71-3-1117......................................................................40, 49, 51

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*,.......................................................................................................12, 16, 21

## OTHER AUTHORITIES

Admin. R.M. 37.85.407(1).....................................................................................34

Admin. R.M. 37.85.407(5).....................................................................................34

Article III of the U.S. Constitution ...............................................................*passim*

## RULES

Fed. R. Civ. P. 12(b)(1)..................................................................................*passim*

Fed. R. Civ. P. 12(b)(6)...........................................................................12, 52, 53

Fed. R. Civ. P. 23 ......................................................................................38

## I.   INTRODUCTION

Contrary to Plaintiffs' hyperbole in the opening paragraph of their opening brief, this case has nothing to do with "taking advantage of injured, vulnerable patients by billing them excessive amounts for healthcare." One of the primary reasons the District Court found that the Plaintiffs lacked standing is that they were neither billed nor paid anything for the healthcare services they received from the two hospital defendants. Indeed, after multiple amendments to the Complaint, the only bill included in Plaintiffs' Second Amended Complaint ("SAC") shows that Plaintiff Terri Searsdodd was billed nothing and paid nothing. Plaintiffs' counsel acknowledged the fact that Plaintiffs paid nothing at the hearing. ER-13-14 (citing ER-47-48). What this case is actually about is Plaintiffs attempting to dictate how the hospitals are paid by certain insurance carriers. But, regardless of which insurer pays or how much, the payment by the Plaintiffs is the same—zero. As a result, the District Court properly found that Plaintiffs lack standing. The dismissal should be affirmed.

Plaintiffs bring a putative class action against Defendants Benefis Health System, Inc., Benefis Hospitals, Inc., Benefis Medical Group, Inc., and Kalispell Regional Medical Center, Inc. (collectively, the "Hospitals"), along with MedEquity Corporation ("MedEquity") and Magellan Resource Partners, LLC (together with the Hospitals, "Defendants"). Plaintiffs allege that they were injured in automobile collisions caused by third-party tortfeasors, were insured by either private or public health insurers, and received medical treatment at one or more of the Hospitals. *See* ER-143-45, ¶¶ 16-25. This case involves liens on recoveries

from third party liability insurers ("TPLs"). TPLs are often car insurance companies (*e.g.*, Progressive Insurance or State Farm) for a party that is liable in a car accident. In such instances, the TPL is the party responsible for paying for health care services arising from injuries related to an accident caused by the at-fault party. Plaintiffs take issue with Defendants placing liens on recoveries from the TPLs for the undiscounted value of the services rendered by the Hospitals. Defendants assert that the Hospitals should have accepted discounted rates from either government payers (*e.g.*, Medicare) or private insurers (*e.g.*, Blue Cross Blue Shield or Aetna).

Plaintiffs lack standing to pursue these claims. As set forth above, Plaintiffs paid nothing for the services. Plaintiffs are also not parties to the Hospitals' contracts with private health insurers, so they have no right to force the Hospitals to accept discounted rates contained in those agreements. Similarly, with respect to Plaintiffs who have Medicare and Medicaid coverage, the District Court properly determined that they are insurers of last resort and that the Hospitals are required to seek reimbursement from TPLs before billing government payers. Thus, Plaintiffs cannot claim harm by Defendants doing what they are required by law to do. Finally, Montana law specifically authorizes the Hospitals to issue medical liens. Thus, again, Plaintiffs cannot claim harm from a practice that Montana law specifically permits.

Since Plaintiffs paid nothing, had no rights (contractual or otherwise) to dictate rates the Hospitals were paid by TPLs, and the liens complained about are specifically authorized under Montana law, the District Court properly found that

Plaintiffs had no injury and thus lacked standing to pursue their claims. The District Court's order should be affirmed.

## II.     STATEMENT OF JURISDICTION

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1332(d)(2). Plaintiffs bring claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., thus establishing federal question jurisdiction under 28 U.S.C. § 1331. This Court also has jurisdiction under 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act, because Plaintiffs claim monetary damages exceeding $5,000,0000 (ER-197) and at least one member of the purported class is a citizen of a State different than any Defendant. *See* ER-140-42, ¶¶ 1-10. This Court has jurisdiction under 28 U.S.C. § 1291.

## III.    STATEMENT OF ISSUES PRESENTED

Plaintiffs purport to present five issues to the Court. However, the issues contain misstatements of what the District Court actually did, present issues that were not presented below and have nothing to do with the case, or are so vague as not to present any issue at all.

Plaintiffs' issue one is that the District Court decided the Rule 12(b)(1) motion under the "standard for a Rule 12(b)(6) motion." AOB-4. The District Court's order plainly includes an analysis for dismissal under Rule 12(b)(1). Moreover, as discussed below, given the absence of harm, dismissal under either Rule 12(b)(1) or (6) was appropriate.

Plaintiffs' issue three is that the District Court erred in dismissing the SAC when "numerous claims were not addressed by the District Court and unaffected by its errant legal rulings [*sic*] [.]" AOB-4. What "numerous claims" were not addressed or what "errant legal rulings" exist is never stated.

Plaintiffs' purported issue four claims the existence of factual disputes that are not actually factual disputes or relate to issues that are not relevant to the case or the District Court's ruling. *Id*. For example, whether this is a case of first impression is not a "factual dispute." And, whether there were invalid assignments of personal injury claims is not relevant to this case as Plaintiffs do not allege they assigned their personal injury claims.

Plaintiffs' fifth issue is that the District Court erred by not explaining the refusal to grant leave to amend and dismissing Plaintiffs' SAC. *Id*. Again, Plaintiffs misrepresent the District Court's order. The District Court's reasoning is based on the law and the undisputed fact that Plaintiffs did not pay anything for their medical services. The rationale for dismissal was explained and, as detailed herein, is correct.

The only issue presented by Plaintiffs that is relevant to this appeal is issue number two regarding the existence of an injury-in-fact. Given the District Court's actual analysis and order, that issue is more aptly described and framed as follows:

Did the District Court properly conclude that Plaintiffs lack Article III standing because they failed to allege an injury-in-fact where: (1) Plaintiffs admit they paid nothing for the medical treatment they received; (2) Plaintiffs have no right to force the Hospitals to accept discounted

13

government rates or rates that the Hospitals negotiated with private health insurers; and (3) Montana law authorizes Defendants to file liens against TPLs for the undiscounted rates?

## IV. STATEMENT OF THE CASE

### A. The Parties

Plaintiffs are ten individuals (Kodiak Blaine, Douglas Darko, Christopher Flower, Reynolds Hertel, Karen Lappi, April Posey, Terri Searsdodd, Edward Nelson, Jon L. Williams, and Emily Haro) who allege that they were injured in automobile collisions.

The Hospitals—Benefis Health System, Inc., Benefis Hospitals, Inc., Benefis Medical Group, Inc., and Kalispell Regional Medical Center, Inc.—are nonprofit health care systems based in Montana that provided medical treatment to Plaintiffs. ER-141, ¶¶ 5-8; ER-143-45, ¶¶ 16-25.

MedEquity is a consultant that assists the Hospitals with TPLs. Part of MedEquity's work includes administering statutory liens on behalf of the Hospitals. *See* ER-146, ¶ 28; ER-149, ¶¶ 34-35. Plaintiffs allege that MedEquity and Magellan Resource Partners, LLC are related. *See* ER-146, ¶ 28.

### B. Plaintiffs Brought Suit Against Defendants Challenging Defendants' Billing and Lien Practices

Although not a model of clarity, Plaintiffs allege that they were injured in automobile collisions caused by third parties. Plaintiffs claim to have health insurance with either private insurers like Blue Cross Blue Shield or are insured by Medicare or Medicaid. ER-143-45, ¶¶ 16-25. Each Plaintiff received medical care

14

related to their car accidents at one of the Hospitals. *Id.* Plaintiffs further allege that the Hospitals would internally identify the payer for car accident-related treatment as "MedEquity." *See* ER-151, ¶ 38. MedEquity, which Plaintiffs allege processes third-party insurance claims for the Hospitals (*see* ER-149, ¶¶ 34-35), would then file medical liens on third-party liability insurance policies. Plaintiffs allege that the liens would be for the full undiscounted rates for the service, as opposed to the discounted rates under government programs or that the Hospitals negotiated with private insurers. ER-159, ¶ 49. Plaintiffs refer to this undiscounted rate as the "chargemaster" rate.

Although there are 10 named Plaintiffs, the SAC includes particularized allegations of bills and liens only as to one, which Plaintiffs describe as an "illustrative" example. ER-162-66, ¶ 56. According to the SAC, Plaintiff Terri Searsdodd was insured through Blue Cross Blue Shield and was treated by a Benefis entity after a car accident. *Id*. One of the Benefis entities charged $309 for an office visit and $257 for a cast, which Searsdodd alleges are chargemaster rates. Blue Cross Blue Shield paid the Benefis entity its negotiated rate of $176.71 for the office visit and the cast. Defendants then sent a fax to Progressive Insurance, a TPL, claiming $3,829 in medical liens, including the full $566 for the office visit and cast. *Id*. Plaintiffs allege that Searsdodd herself did not receive notice of the lien. Regardless of whether Blue Cross Blue Shield or Progressive Insurance paid for the office visit and cast, Searsdodd owed nothing and was never asked to pay anything. This fact was confirmed with her receipt of a statement with a "$0.00" balance. *Id*. Beyond these core allegations, Plaintiffs also allege that MedEquity's

corporate form and business status contain certain defects. *See* ER-146, ¶ 29; ER-147, ¶ 31.

Based on these allegations, Plaintiffs bring 11 claims for relief against Defendants for: (1) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964; (2) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692; (3) violation of the Montana Consumer Protection Act, Mont. Code Ann. § 30-14-101; (4) tortious interference with business relations; (5) unjust enrichment; (6) fraud; (7) constructive fraud; (8) breach of the implied covenant of good faith and fair dealing, Mont. Code Ann. § 28-1-211; (9) deceit, Mont. Code Ann. § 27-1-712, *et seq*.; (10) conversion and misappropriation, Mont. Code Ann. § 27-1-320, *et seq*.; and (11) declaratory and injunctive relief. *See* ER-170-97.

The core theory of liability underpinning all 11 causes of action is the same: Plaintiffs contend that Defendants' practice of filing liens against the TPLs for the chargemaster rate, instead of accepting either government payer rates or negotiated rates with private insurance policies, deprived Plaintiffs of the "benefits [ ] due under those insurance policies or benefit programs." ER-152, ¶ 39. Despite admitting that they paid nothing for their medical treatment, Plaintiffs contend that "[i]t is inequitable for Defendants to retain payment of the medical liens [from the TPLs], because any such payments were received with complete disregard (or in addition to) insurance coverage and contrary to the contracted or regulatory rate for the services." ER-187-88, ¶ 114.

Plaintiffs also allege a smattering of other complaints related to Defendants' billing and lien practices, including that they violate "Defendants' own patient rights policies" and "violate the notice requirements of Mont. Code Ann. § 71-3-115 [*sic*], by failing to serve notice upon the person against whom liability is asserted." *See, e.g.,* ER-153, ¶ 40; ER-161, ¶ 52.

### C.   Procedural History

#### 1.   Defendants Moved to Dismiss the SAC Because Plaintiffs Lack Standing to Pursue Their Claims

All Defendants moved to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(1) on the grounds that Plaintiffs lacked standing to pursue their claims. ER-118-38. Defendants raised numerous arguments, both affirmatively and in anticipation of Plaintiffs' expected response, demonstrating that Plaintiffs did not and could not show that they suffered a concrete and particularized injury-in-fact. Defendants established that: (1) Plaintiffs failed to provide any individualized allegations showing that they were personally subjected to Defendants' alleged billing and lien practices, or how they were harmed as a result, ER-129 (citing *In re Apple iPhone Antitrust Litig.,* No. 11-6714, 2013 WL 4425720, at *6 (N.D. Cal. Aug. 15, 2013)); (2) Plaintiffs did not allege that they paid anything for their medical treatment, ER-130; (3) Montana law allows a hospital to place a lien upon proceeds payable by an insurer and to serve written notice on the insurer against whom the lien is asserted, ER-130 (relying on Mont. Code Ann. § 71-3-1115(2); (4) medical service providers are entitled, and in some cases even required, to seek the cost of services from TPLs instead of Plaintiffs' private health insurance,

Medicare, or Medicaid, ER-131-32 (relying primarily on *Estate of Donald v. Kalispell Regional Medical Center,* 258 P.3d 395, 400 (Mont. 2011) and *Harris v. St. Vincent Healthcare,* 305 P.3d 852, 858 (Mont. 2013)); (5) Plaintiffs have no right to recover the difference between the undiscounted chargemaster rate and the negotiated rate, ER-132 (citing *Conway v. Benefis Health Sys.,* 297 P.3d 1200, 1207 (Mont. 2013), *Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill.,* 184 P.3d 1021, 1029 (Mont. 2008), and *Gibson v. United States*, 499 P.3d 1165 (Mont. 2021)); and (6) even assuming Defendants violated statutory or regulatory standards, bare procedural violations do not establish injury-in-fact sufficient to confer standing. ER-132-33 (*citing Spokeo Inc. v. Robins,* 578 U.S. 330, 341 (2016), as revised (May 24, 2016)).

## 2. Plaintiffs' Opposition Relied on Boilerplate Causation and Harm Allegations, and Non-Existent "Factual" Disputes

Plaintiffs made very few arguments in their opposition. Plaintiffs placed, as they still do, great emphasis on the length of their complaint and the number of claims alleged. ER-101. To support their alleged injuries-in-fact, Plaintiffs filled nearly four pages of their opposition by copying and pasting boilerplate allegations from each of the 11 claims for relief in the SAC, which alleged that Plaintiffs suffered "damages" "as a direct and proximate result" of Defendants' conduct. ER-106-110. Plaintiffs also claimed there were factual disputes and pointed to 15 conclusory alleged "harms" that were not supported by any facts, including unidentified deprivations of "property," "contract," and "statutory" rights. ER-111. They further argued that the "illustrative" case of Plaintiff Searsdodd fulfilled the

notice pleading standard for all named Plaintiffs. ER-112. As to Defendants' arguments that Montana law authorized the liens, Plaintiffs contended that "[t]he resolution of these legal issues is better left for another day." ER-114.

### 3. Defendants' Reply Reinforced Plaintiffs' Lack of Injury

Defendants' reply highlighted that Plaintiffs did not dispute that they paid nothing for their medical treatment and could not articulate how they had been harmed by Plaintiffs' mere filing of the liens. ER-86-91. Defendants further argued that Plaintiffs supplied nothing but conclusory, boilerplate allegations insufficient to establish injury-in-fact, as Plaintiffs "may not 'rely on a bare legal conclusion to assert injury-in-fact.'" ER-88-91 (citing *Daniel v. Nat'l Park Serv*., 891 F.3d 762, 767 (9th Cir. 2018)).

Finally, Defendants rejected Plaintiffs' contention that the motion to dismiss required the Court to decide any factual issues, as Defendants' motion rested on facts in the SAC, which, for purposes of the motion, Defendants accepted as true, and relevant law to establish that Plaintiffs did not and could not allege injury-in-fact. ER-94-96. Given the undisputed fact that Plaintiffs paid nothing for the medical care they received, and federal and Montana law regarding the liens at issue, Defendants requested that their motion be granted without leave to amend because the flaws could not be cured and Plaintiffs had not even attempted to articulate how they would amend the SAC sufficiently to establish injury-in-fact. ER-96-97.

**4.    The District Court Agreed With Defendants and Dismissed the SAC on Standing Grounds**

The District Court granted Defendants' motion to dismiss without leave to amend, holding that Plaintiffs failed to "satisfy the threshold requirement imposed by Article III of the U.S. Constitution by alleging an actual case or controversy." ER-10. *See also* ER-27 ("Plaintiffs have failed to allege an injury-in-fact cognizable under Montana law, and as a result, lack standing to pursue these claims."). The District Court first addressed Montana statutory authority allowing the Hospitals to file the liens under Mont. Code Ann. § 33-1-110(2). ER-11-13.

The District Court then addressed Plaintiffs' alleged injuries, noting that "Plaintiffs acknowledged at the hearing that they have not made payments on the liens to the medical providers." ER-13-14 (citing ER-47-48). The Court observed that Plaintiffs were effectively claiming that they are third-party beneficiaries of the preferred provider agreements between the Hospitals and Plaintiffs' private health insurers and could therefore force the hospitals to accept those rates. ER-14. The Court concluded this theory of liability is foreclosed under Montana law. ER-14-21.

As to those Plaintiffs with private insurance, the Court held that Montana law did not give Plaintiffs a property right in the difference between the chargemaster rates and the negotiated rates. ER-14-18. And, because Plaintiffs had not paid for their treatment, they had received the full benefit of their insurance policies. ER-18. As to those Plaintiffs with government insurance (Medicaid and Medicare), which are "secondary payers" or "payers of last resort," the Court

found that the Hospitals were required to seek costs from the TPLs in the first instance, and could do so at the undiscounted rates. ER-18-21 (*citing Estate of Donald,* 258 P.3d at 400).

The Court then analyzed the legality of medical liens in other jurisdictions, concluding that "[t]he balance of authority . . . comports with Montana law as interpreted in *Harris* and *Conway*." ER-21-23. Despite Plaintiffs' urging, the Court declined to adopt the position of the Missouri Court of Appeal in *Morgan v. St. Luke's Hospital of Kansas City*, 403 S.W.3d 115 (Mo. Ct. Apps. 2013), which held that a medical lien filed for the chargemaster rate after the medical provider already received payment from an insurer at the negotiated rate was invalid because once the insurer paid the negotiated rate, there was no debt upon which to assert the lien. ER-21-22. As the Court noted, Plaintiffs failed to explain why *Morgan* should apply here, instead of binding Montana Supreme Court precedent. ER-23.

Finally, the Court addressed Plaintiffs' RICO and FDCPA claims, finding that Plaintiffs failed to allege an injury to their business or property by reason of any alleged RICO violation as required under § 1964(c) because Plaintiffs had "no direct property interest in the difference between the negotiated rates accepted by the medical providers under a preferred provider agreement and the medical providers' full chargemaster rates" and "do not stand as third-party beneficiaries to these preferred provider agreements under Montana law." ER-24. Similarly, as to the FDCPA, the Court found that "Montana law authorizes the filing of the medical liens as part of Defendants' efforts to collect the full chargemaster rates

for their medical services" and thus, Plaintiffs could point to no actual, "concrete" injury to confer standing. ER-25 (citing *Spokeo*, 578 U.S. at 339).

In closing, the Court acknowledged an argument Plaintiffs made at the hearing on the motion, but not in its Opposition or in the SAC, that "settlements received by Plaintiffs from the TPLs contain finite amounts of money and the medical liens asserted by Defendants cut into the finite amounts that Plaintiffs will receive from their settlements." ER-26. The Court rejected this argument too, holding that Plaintiffs' desire to be "made whole" was not implicated by the filing of lawful liens. ER-27. The Court thus concluded that "Plaintiffs have failed to allege an injury-in-fact cognizable under Montana law, and as a result, lack standing to pursue these claims." ER-27.

As set forth below, the District Court's analysis was correct and the decision should be affirmed.

## 5. Plaintiffs' Opening Brief Attempts to Rewrite Their SAC

Plaintiffs' Opening Brief includes pages of facts and allegations not included in the SAC or the record before the District Court. The new facts largely relate to Plaintiff Emily Haro. The SAC references Haro in only two places, alleging that she: is a citizen and resident of Texas (ER-141, ¶ 4); was insured by Evolution Healthcare (ER-145, ¶ 25); and was injured in an automobile collision and received medical care from one or more of the Hospitals. *Id*. The Opening Brief tells another story. Haro was struck by an uninsured drunk driver and was treated at Plaintiff Kalispell Regional Medical Center ("KRMC"). AOB-5. Haro paid premiums for both private health insurance through Youth With A Mission and for

uninsured motorist insurance coverage. *Id*. Plaintiffs assert that when patients "like Haro" require medical care, KRMC represents that their insurance claims will be filed with the patients' insurance companies and that this supposedly "allows patients like Haro to receive whatever corresponding cost reductions and benefits are due under their health insurance or government insurance." *Id*. pp. 5-6. KRMC instead sent the undiscounted chargemaster rates to MedEquity, which "sent" liens to Haro's uninsured motorist insurance company for the full undiscounted rates. *Id*. pp. 7-8.

Plaintiffs contend that the lien "applied to the whole of Haro's tort recovery, not just the amount allocated to medical expenses," and as a result of the lien, Haro was deprived of "the benefit of her health insurance" and "the benefit of her uninsured motorist insurance, which provides those funds necessary for her missed work, permanent pain, incidental expenses, or future medical expenses." *Id*. p. 8. None of these allegations about Haro appear in the SAC. Rather, Plaintiffs' Opening Brief cites to the SAC for generalized allegations about chargemaster rates (*see, e.g.*, AOB-6, citing ER-155-56, ER-161), the Hospitals' supposed representations to patients (AOB-5-6 (citing ER-154)), and attorney argument at the motion to dismiss hearing (AOB-5, citing ER-48).

## V.    SUMMARY OF ARGUMENT

Plaintiffs challenge Defendants' alleged practice of placing liens on TPLs for their full "chargemaster" rates for medical care. Plaintiffs assert that the Hospitals are instead obligated to accept the discounted rates that the Hospitals negotiated with Plaintiffs' private insurers or rates offered by government payers

like Medicare. All of Plaintiffs' causes of action rely on this theory. The District Court properly concluded that the Plaintiffs lacked standing to pursue their claims.

There are numerous problems with Plaintiffs' claims. Most glaringly, Plaintiffs concede that they paid nothing for their medical treatment. They assert that they have nevertheless been harmed by the Defendants' lien practices because they deprive Plaintiffs of the "benefit" of the Hospitals' negotiated rate with health insurers. Thus, Plaintiffs' claims are about seeking to force the Hospitals to cut certain deals with health insurance companies or TPLs regarding payment.

The District Court correctly dismissed Plaintiffs' SAC on the basis that Plaintiffs lacked standing to bring such claims. The Court concluded that Plaintiffs suffered no injury-in-fact as a result of Defendants' lien practices for various reasons, including that: (1) Plaintiffs paid nothing for their medical treatment; (2) Plaintiffs are not parties to or beneficiaries of contracts between the Hospitals and health insurance companies so they have no property interest in the difference between the undiscounted chargemaster rates and the negotiated rates; and (3) Defendants are entitled under Montana law to file liens against the TPLs for undiscounted rates. In addition, with respect to Plaintiffs who participate in government programs such as Medicare and Medicaid, the law requires the Hospitals to pursue payment from the TPLs and nothing requires the Hospitals to only bill or accept discounted Medicare rates from those TPLs, contrary to what Plaintiffs are seeking. Accordingly, Plaintiffs do not and cannot establish the requisite injury-in-fact to confer standing under Article III.

The District Court's order relied on Montana statutory authority authorizing Defendants to file the liens at the chargemaster rates. *See* Mont. Code Ann. §§ 33-1-110, 71-3-1114. It also relied on Montana Supreme Court precedent establishing that insureds have no property interest in the difference between a provider's chargemaster rates and its negotiated rates. *See Newbury,* 184 P.3d at 1029; *Conway,* 297 P.3d at 1207; *Harris,* 305 P.3d at 858; *Estate of Donald,* 258 P.3d at 400. Again, this analysis was correct.

Like they did in response to Defendants' motion to dismiss, Plaintiffs try to make up for a lack of valid arguments with volume. Plaintiffs raise at least seven different arguments to attempt to find some error by the District Court requiring reversal. As discussed herein, some of these arguments were raised below and some were not. All are flawed, as Plaintiffs misread and misapply dispositive Montana statutes and Supreme Court precedent, invoke plainly inapplicable theories of liability, and attempt to manufacture factual disputes where none exists, among other deficiencies. None of Plaintiffs' arguments have merit.

Plaintiffs have not—and cannot—show any injury-in-fact to support standing, and their arguments to the contrary fail. The District Court properly dismissed Plaintiffs' claims and this Court should affirm.

## VI.   STANDARD OF REVIEW

This Court reviews *de novo* a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *See Doğan v. Barak*, 932 F.3d 888, 892 (9th Cir. 2019). The District Court's decision may be affirmed on any ground supported by the record, even if not relied upon below. *See M & T Bank v. SFR Invs. Pool 1, LLC*, 963 F.3d

854, 857 (9th Cir. 2020). "If the decision below is correct, it must be affirmed, even if the district court relied on the wrong grounds or wrong reasoning." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1213 (9th Cir. 2019) (*quoting Cigna Property and Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 418 (9th Cir. 1998)).

## VII. <u>ARGUMENT</u>

### A. <u>The District Court Correctly Dismissed the SAC Because Plaintiffs Lack Standing to Bring Their Claims</u>

Federal courts are courts of limited jurisdiction and Plaintiffs bear the burden of establishing subject-matter jurisdiction, including that they have standing to pursue their claims. *See Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (internal citation omitted); *see also E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 691 (9th Cir. 2021).

To establish standing, the party invoking the court's jurisdiction must show that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Van v. LLR, Inc.*, 962 F.3d 1160, 1162 (9th Cir. 2020) (*quoting Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018)). To demonstrate an "injury in fact," a plaintiff must establish "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations

26

omitted). The injury must "affect the plaintiff in a personal and individual way." *Spokeo, supra,* 578 U.S. at 339 (citation omitted).

A court may consider purely legal matters in analyzing standing. In *Los Angeles Unified Sch. Dist. v. Bank of Am. Corp*., for example, Los Angeles Unified School District ("LAUSD") brought a claim against certain banks for violating the Fair Housing Act of 1968 allegedly resulting in a reduction in property tax revenue for the district. No. CV 14-7364 PA (AGRX), 2015 WL 13653868, at *1-2 (C.D. Cal. Jan. 7, 2015). The court dismissed LAUSD's complaint. In reaching its conclusions the court looked to the California Education Code to determine the impact of the alleged conduct on the district. *Id.* at *3. Applying the funding construct of the statutes, the Court concluded there would be no impact and dismissed on standing grounds. *Id.* at *3-4.

Here, the District Court dismissed the SAC, finding that Plaintiffs did not, and could not, establish an injury-in-fact sufficient to confer standing. ER-27. The Court concluded that Defendants' practice of filing liens against the TPLs for undiscounted rates did not cause Plaintiffs any injury because, among other reasons, Plaintiffs admit that they paid nothing for their medical care; Plaintiffs have no right to force the Hospitals to accept a specific negotiated rate of payment for medical services; and under Montana law, medical liens are permitted. ER-25-27. The District Court's analysis was correct.

### 1.    Plaintiffs Paid Nothing for Their Medical Care

Plaintiffs concede that they paid nothing for the medical care they received. ER-13-14 (citing ER-47-48). The "illustrative" case of Plaintiff Searsdodd (the

only plaintiff about whom the SAC provides even a modicum of detail), confirms this.

According to the SAC, Searsdodd was insured through Blue Cross Blue Shield, a private health insurer. ER-162, ¶ 56. Searsdodd was treated at one of the Hospitals after being injured in a car accident. *Id*. The undiscounted rates for her treatment totaled $566. ER-165, ¶ 56. Blue Cross Blue Shield paid $176.71 under the negotiated terms of a provider agreement. ER-164, ¶ 56. One of the Hospitals then "claimed a medical lien" for the full $566 from Progressive Insurance, a TPL. ER-165, ¶ 56. Progressive allegedly made a $566 payment to one of the Hospitals and the Hospital refunded Blue Cross Blue Shield its $176.71 payment. *Id*. Searsdodd was sent a statement showing a "[b]alance [d]ue" of "$0.00." ER-164; *see also* AOB-11. This alleged "example" highlights the problem with Plaintiffs' claims. Regardless of whether Progressive Insurance or Blue Cross Blue Shield made the payment, Plaintiff Searsdodd paid exactly the same amount—zero. *Id.*

In their Opening Brief, Plaintiffs again admit they paid nothing, but try to sidestep that key fact by claiming that they have other injuries or harms beyond actually having to pay for medical care. AOB-25. In support of this claim, Plaintiffs primarily include a list of vague assertions like "predatory debt collection practices," "threats of lawsuits," "interference with lien rights," "unfair and deceptive conduct" or "equitable relief to remedy unlawful conduct." *Id.* Indeed, most of the purported "harms" are not harms at all but just potential remedy or liability theories. Plaintiffs' purported "innumerable harms" list does not come close to meeting basic pleading requirements let alone establish injury-in-fact. *See*

*Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . .") (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Spokeo,* 578 U.S. at 339.

> **2.    Under Montana Law, Plaintiffs Have No Property Interest in Payment Rates in Hospital Contacts or Government Programs**

The only purported harm that is described in any detail in Plaintiffs' brief relates to the claim that they have been deprived of a "property interest" because they "lost the benefit" of their insurance. AOB-24. Plaintiffs claim in this regard relies on the false premise that they have a right to force the Hospitals to accept certain payment rates or payments from certain sources. To the contrary, the Hospitals are free to charge different rates to different payers. As such, Plaintiffs cannot point to any "legally protected interest" that Defendants have invaded by seeking chargemaster rates from the TPLs. *See Lujan*, 504 U.S. at 560. As detailed below, the District Court properly analyzed Montana case law and rejected Plaintiffs' argument.

In *Newbury, supra,* the Montana Supreme Court affirmed the proposition that an insured party has no right to receive multiple recoveries for the same loss just because that party has multiple potential sources from which payment can be made. 184 P.3d at 289. In *Newbury*, the plaintiff was injured in an accident and received $17,230 from workers compensation. *Id*. at 281. Plaintiff also had two

State Farm auto insurance policies covering the same loss. *Id*. Instead of paying all medical bills, State Farm only paid the portion not covered by workers compensation. *Id*. Plaintiff sued to recover the entire amount from State Farm. *Id*. at 281-82. The district court granted State Farm's motion for summary judgment (and denied plaintiff's cross-motion) and the Montana Supreme Court affirmed. The Supreme Court held that plaintiff was only entitled to that portion of the State Farm policy that was needed to pay his remaining medical expenses. *Id*. at 289. He could not recover the full amount of his medical expenses from State Farm because plaintiff "received full payment for his medical expenses" and "owe[d] nothing to any health-care provider," and it would result in a windfall should he recover the full policy limits. *Id*. at 289-90.

The Supreme Court reaffirmed and extended these concepts in *Conway, supra,* 297 P.3d at 1202. There, plaintiff was injured in a car accident, incurring medical costs totaling $2,073.65. The medical provider billed the plaintiff's public health insurer (TRICARE) and his auto insurer. *Id*. The auto insurer paid $1,866.29 at an undiscounted rate and TRICARE paid $662.74 for the services under a preferred provider agreement between the provider and Blue Cross Blue Shield (a network subcontractor for TriWest Healthcare Alliance, which administered TRICARE in the region). The medical provider then reimbursed TRICARE, which, like Medicaid and Medicare, "functions as a secondary payer." *Id*. Much like Plaintiffs seek to do here, plaintiff sued the medical provider for breach of contract, breach of third-party beneficiary contract, and intentional interference with contractual relations, seeking to recover the additional $1,203.55 that the

provider received from the auto insurer above the TRICARE reimbursement rate. *Id*.

The district court granted plaintiff's summary judgment motion, holding that the plaintiff was a third-party beneficiary under the Blue Cross Blue Shield provider agreement, which the provider breached by accepting a higher rate for its services. The Supreme Court reversed, holding that nothing precluded the medical provider from accepting the full undiscounted rates from plaintiff's auto insurer because the auto insurer was a stranger to the provider agreement. *Id*. at 1206.

Importantly, the Court rejected the notion that the plaintiff had a direct interest in the difference between the undiscounted rate and the negotiated rate, holding that plaintiff "is no more entitled to pocket excess medical payments here than he would be under . . . any other situation in which all of his medical expenses are paid by his insurer under its medical payments coverage." *Id*. at 1207. Because plaintiff's medical bills had been paid in full and he was not entitled to receive any additional payments from the auto insurer, the provider "simply has not proximately caused any damages" to plaintiff by securing a higher payment rate from the auto insurance carrier. *Id*. *See also Gibson, supra,* 499 P.3d at 1171.

The situation presented here is the same, which is why the District Court properly found that the Plaintiffs were not third-party beneficiaries to contracts between the Hospitals and private health insurers. ER-26. And, as a result, the Plaintiffs cannot claim a "property right" in the difference between negotiated or government rates and other undiscounted rates.

The Montana Supreme Court confirmed these concepts yet again in *Harris, supra,* 305 P.3d at 858. In *Harris*, two plaintiffs were involved in separate car accidents caused by separate drivers. *Id*. at 853. The health care providers to both plaintiffs submitted bills to auto insurance companies that paid undiscounted rates. *Id.* Blue Cross Blue Shield of Montana (BCBS) provided health insurance for both plaintiffs and had entered into preferred provider agreements with both providers. *Id*. Both plaintiffs filed complaints against the providers for breach of contract and constructive fraud seeking to recover as damages the difference between the amount that the TPLs had paid to the medical providers and the reduced reimbursement rates under their preferred provider agreements with BCBS. *Id*.

The district courts dismissed both complaints and the Montana Supreme Court affirmed, holding that the medical providers had not breached the preferred provider agreements when they billed the TPLs at the full rates instead of the preferred provider agreements' reimbursement rates. *Id*. at 858. The Supreme Court reasoned that the TPLs were not parties to the preferred provider agreements and thus were not entitled to the discounted rates contained in them, and the providers had no legal duty to anyone to charge anyone other than BCBS the reduced reimbursement rates. *Id*.

This trio of cases leaves no doubt that Plaintiffs have no property interest in the delta between the undiscounted rates and negotiated or government rates. Plaintiffs are not parties to or third-party beneficiaries of the preferred provider agreements. Thus, Plaintiffs cannot claim to have suffered an injury-in-fact

because the Hospitals did not accept discounted rates, because the Plaintiffs have no right to those rates or to force the Hospitals to accept such rates.

This conclusion is even more pronounced in the case of the Plaintiffs with government insurance, in which case the Hospitals must seek reimbursement from all third party sources, including TPLs, in the first instance. *Estate of Donald, supra,* 258 P.3d at 400 makes this clear. There, plaintiff was injured in an automobile accident in which he was a passenger in one the cars. He incurred $227,900 in medical bills. Plaintiff qualified for Medicaid, which expressed a willingness to pay the provider $56,998.49. *Id*. at 398. The medical provider instead billed the plaintiff's estate for the full amount for its services and filed a lien in the amount of $154,839.38 with the drivers of both cars' TPLs and the lawyers for the estate. *Id*. The two TPLs settled plaintiff's claim and the estate filed claims against the medical provider for breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, negligence, and implied contract to accept Medicaid payments. *Id.* at 399.

The district court granted the medical provider's motion for summary judgment and the Montana Supreme Court affirmed. The Court explained: "It is axiomatic that 'Medicaid is designed to be the payer of last resort, available only when no other source is liable for the expense.'" *Id*. at 400 (citing *Blanton v. Dep't of Pub. Health & Hum. Servs*., 255 P.3d 1229 (Mont. 2011)). Accordingly, under Montana's regulations to implement the federal Medicaid program, the provider was "mandated" first to seek payment from any third-party sources that may be

liable for the loss. *Id*. (relying on Admin. R.M. 37.85.407(1), Admin. R.M. 37.85.407(5)).

Thus, not only are the Hospitals entitled to seek undiscounted chargemaster rates from TPLs for patients with government insurance, but Defendants must go to those TPLs first.

In sum, Plaintiffs suffered no injury as a result of Defendants filing liens at undiscounted amounts because Plaintiffs have no rights to or interest in the delta between a Hospital's undiscounted chargemaster rates and the reduced rates paid by government programs or under agreements with commercial health insurers. In short, Plaintiffs cannot claim harm to a right they do not have.

### 3. Montana Statutes Authorize the Hospitals to File the Liens For Undiscounted Rates

Montana law authorizes Defendants to file the liens at the chargemaster rates, which is yet another reason why Plaintiffs cannot allege Defendants' conduct caused harm to a "legally protected interest." Under Mont. Code Ann. § 71-3-1114(2)(b), the Hospitals were entitled to place a lien on "all proceeds or payment" payable by the TPLs. Under § 71-3-1114(2)(a), if a person is insured or is "a beneficiary under insurance that provides coverage in the event of injury or disease," a medical provider is entitled to file a lien for the value of the medical services rendered. *Id*. § 71-3-1114(2)(a) ("If a person is . . . a beneficiary under insurance that provides coverage in the event of injury or disease, there is a lien . . . upon required notice of a lien being given by" a medical provider "for the value of services rendered or products provided for the diagnosis and treatment of a medical

condition."). The lien may be placed on "all proceeds or payments . . . payable by the insurer." *Id*. § 71-3-1114(2)(b). And, contrary to Plaintiffs' protestations that the Hospitals failed to the serve the liens on them personally or on their attorneys (*see* AOB-10) notice of the lien only must be served "upon the insurer against whom the lien is asserted," indicating the nature and value of the services rendered, when and for whom, and that a lien is claimed. *Id.* § 71-3-1115(2).

Thus, Plaintiffs cannot claim they were injured by the Hospitals placing liens on TPLs—something that is specifically authorized by statute. Indeed, Plaintiffs have no legally protected right in Defendants either seeking reimbursement from their health insurance carriers (instead of the TPLs), or doing so at the negotiated/government rate. And as in *Los Angeles Unified Sch. Dist.*, 2015 WL 13653868, at *3-4, the District Court was entitled to look to relevant Montana statutes to determine that the liens caused Plaintiffs no injury. Again, the District Court properly analyzed this issue.

In addition to the case law set forth above, by statute, the Hospitals are entitled to seek undiscounted rates from TPLs. Under Mont. Code Ann. § 33-1-110, insurance payments to a health care provider must be paid "in accordance with any written agreement or contract" between the health care provider and the insurer, including any negotiated, discounted rates. *Id*. § 33-1-110(2). Medical providers are not required to accept discounted rates, however, for services provided to an insured individual if payment is made from other sources, such as "casualty insurance":

a provider who has entered into a provider agreement with a person
as defined in 33-1-202[1] is not required to provide a discount or
accept payment at the rate agreed to in the provider agreement for
health care services that are provided to an insured individual if the
payment for the services is made directly or indirectly or is
otherwise required to be made: (a) under casualty insurance as
described in 33-1-206 . . .

*Id*. § 33-1-110(2). "Casualty insurance" under Mont. Code Ann. § 33-1-206
includes "vehicle insurance" for "any loss, liability, or expense resulting from or
incidental to ownership, maintenance, or use of any land vehicle . . . together with
insurance against accidental death or accidental injury to individuals . . . while in,
entering, alighting from, adjusting, or repairing or when caused by being struck by
a land vehicle . . . if the insurance is issued as an incidental part of insurance on the
land vehicle . . ." *Id*. § 33-1-206(1)(a). It also includes "liability insurance," which
is defined as "insurance against legal liability for the death, injury, or disability of
any human being . . . and the provision of medical, hospital, surgical, and disability
benefits to injured persons . . . irrespective of legal liability of the insured, when
issued as an incidental coverage with or supplemental to liability insurance." *Id*.
§ 33-1-206(1)(b). Thus, under § 33-1-110, the Hospitals were not required to
accept discounted rates from the TPLs, even if the Hospitals negotiated reduced
rates with Plaintiffs' health insurers under preferred provider agreements.

Taken together, Montana statutes confirm that the Hospitals were entitled to
seek payment from—and place liens on—the TPLs at the undiscounted rate.

---

[1] " 'Person' includes an individual, insurer, company, association, organization,
Lloyd's, society, reciprocal or interinsurance exchange, partnership, syndicate,
business trust, corporation, or any other legal entity." Mont. Code Ann. § 33-1-
202(3).

Conduct expressly permitted by statute cannot be the basis for Plaintiffs' claimed harm nor would any such purported harm be subject to redress by this action.

### B. Plaintiffs Fail to Address or Distinguish Defendants' Authority

Despite the fact that the District Court engaged in an analysis of the statutes and case law set forth above, Plaintiffs ignore most of the relevant law, and their limited attempts to distinguish Defendants' cited authority are unavailing. Plaintiffs try to distinguish *Harris* and *Conway* on the basis that the plaintiffs in those cases were seeking to have multiple insurers cover the same loss, arguing that this attempted "double recovery" renders the cases inapplicable. AOB-35-37. Not so. As explained directly above, the District Court properly cited *Harris* and *Conway* for the principle that an insured has no property interest in the delta between the undiscounted chargemaster rate and a negotiated discounted rate. This is true whether or not a plaintiff is seeking a double recovery or not.

Plaintiffs further assert that, unlike in *Conway*, Plaintiffs here allege that by placing a lien on the TPLs for the undiscounted rate, the Hospitals deprived Plaintiffs of proceeds reserved for non-medical expenses. As discussed below, *see* Section VII(C)(4), *infra*, Plaintiffs did not allege that in their SAC or raise that issue in their opposition brief to the motion to dismiss. They now assert in attorney argument that a single Plaintiff, Emily Haro, was "deprived of the benefit of her uninsured motorist insurance, which provides those funds necessary for her missed work, permanent pain, incidental expenses, or future medical expenses." AOB-8. Plaintiffs assertions fail procedurally and on the merits.

First, having amended their complaint twice before filing the SAC, Plaintiffs should not be permitted to raise these unpled allegations and arguments for the first time on appeal. *Novato Fire Protection Dist. v. United States*, 181 F.3d 1135, 1141 n.6 (9th Cir. 1999) ("[Plaintiff's] failure to raise the issues in the summary judgment motions waives their right to do so on appeal."). Plaintiffs purport to bring a class action and they made strategic decisions about how they pled their claims. There are three pled classes based on whether a class member has private insurance, Medicare or Medicaid. The other defining characteristic is whether a person received health care from one of the Hospitals and the Defendants asserted a lien. ER-166-67. In pleading their case, Plaintiffs made the decision to avoid pleading issues that could never be subject to class treatment. Whether each class member has multiple applicable policies, what the terms of those policies are, and whether there is insufficient coverage to pay for undiscounted rates as well as lost wages, pain or future medical expenses are plainly not matters subject to class treatment. Fed. R. Civ. P. 23; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) ("Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law . . . What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (emphasis in original) (internal citations omitted). After making a decision about how to frame their case, Plaintiffs should

not be allowed to change that framing before this Court in the hope of reversing the dismissal.

Second, the argument is wrong on the merits. As discussed in detail above, Plaintiffs' claim is premised on a purported right to force the Hospitals to accept a specific discounted payment rate such that they are not even entitled to place a lien on the TPLs for an undiscounted amount. Not only do Plaintiffs not possess a right to force the Hospitals to accept a particular rate, but Montana statutes specifically permit medical liens of this type. Mont. Code Ann. §§ 71-3-1114(2), 33-1-110. Plaintiffs cannot generate an injury-in-fact by claiming a harm to a right that they do not have.

Even less compelling, Plaintiffs attempt to distinguish *Estate of Donald* on the grounds that it was decided on summary judgment, and the question of whether the liens here were properly filed, noticed, and stated are factual issues that cannot be resolved at the pleading stage. AOB-37-38. As described below, *see* Section VII(C)(5), the District Court did not make any factual determinations in coming to its conclusion on standing; rather it accepted the undisputed fact that Plaintiffs paid nothing for their medical care and concluded as a matter of law that Plaintiffs have no property right in discounted medical rates in provider agreements and government programs and that the Hospitals were entitled to file the challenged liens.

Plaintiffs also urge the Court to look to out-of-state authority in *Morgan v. Saint Luke's Hosp. of Kansas City*, 403 S.W.3d 115 (Mo. Ct. App. 2013). In *Morgan*, the Missouri Court of Appeal reversed the trial court's dismissal of a

39

claim based on a provider filing a lien against the TPL for the chargemaster rate after it had accepted the negotiated rate from plaintiff's health insurer and extinguished the debt. *Id*. at 116-17. The court in *Morgan* took issue with the fact that the debt no longer existed once payment was accepted, not that the hospitals did not have the right to seek the full undiscounted rates. *Id.* at 120-21. Moreover, as the District Court correctly pointed out, *Morgan* is contrary to the balance of authority in other jurisdictions (ER 21-23) and Plaintiffs make no effort to explain why it should be applied here.

Lastly, Plaintiffs do not dispute that Montana statutes permit Defendants to file the challenged liens. Indeed, they do not even mention the relevant statutes. Instead, in an effort to distract from that fact, Plaintiffs attempt to manufacture a "factual" dispute where none exists. Plaintiffs refer to Mont. Code Ann. § 71-3-1117 regarding the "reasonable value" of the medical services. As explained below, *see* Section VII(C)(5), § 71-3-1117 has nothing to do with what Plaintiffs allege in this case and does not apply.

### C. <u>Plaintiffs' Other Standing Arguments Are Unavailing</u>

Plaintiffs attempt to undermine the District Court's order by pointing to authorities that do not apply, factual disputes that do not exist, and theories that have not been pled nor argued in the District Court and fail even if they had been properly raised below. All of Plaintiffs' arguments lack merit.

#### 1. Plaintiffs Do Not Identify an Injury-In-Fact

Plaintiffs criticize the District Court for focusing its holding on the conclusion that "Plaintiffs suffered no injury because they did not personally pay

the liens." AOB-23. Plaintiffs argue that the district court "overlooked numerous factual allegations to the contrary" and assert that the SAC "details innumerable harms" that could support standing. AOB-23–25. Plaintiffs list 15 alleged harms, many of which are duplicative. AOB-25. Not only are Plaintiffs wrong about the District Court limiting its analysis to the fact that Plaintiffs paid nothing, but none of the 15 alleged harms save Plaintiffs' claims.

Plaintiffs point to the conclusory assertions that they have been deprived of "money or property rights" and "contractual and regulatory rights." AOB-25. As described above, Plaintiffs have no right in the delta between the undiscounted rate and the negotiated rate, and thus cannot claim any injury to a right they do not have. *See* Section VII(A)(2), *supra*. Nor are Plaintiffs third-party beneficiaries of the provider agreements between the Hospitals and Plaintiffs' health insurers, and thus cannot recover for any breach of the preferred provider agreements. *Id*.

Plaintiffs assert that they have been deprived of various statutory rights. AOB-25. The identified "statutory rights" relate to the Hospitals' alleged failure to provide notice of or register the liens, among other related "harms." This alleged harm wrongly assumes that the Defendants were prohibited from filing liens against the TPLs and had to provide Plaintiffs notice. But, even if there was a statutory violation (which there was not) "a bare procedural violation, divorced from any concrete harm," does not "satisfy the injury-in-fact requirement of Article III." *See Spokeo,* 578 U.S. at 341. Plaintiffs identify no harm associated with the "violations of statutory regulations." AOB-25.

41

Finally, Plaintiffs assert that they have been injured by the Hospitals' wrongful attempts to secure payment on the liens. AOB-25 (arguing Plaintiffs have been harmed by the Hospitals' "predatory debt collection practices," "unfair and deceptive conduct," and "deceitful billing practices."). Not only do Plaintiffs fail to provide any information about what conduct they are referring to or how that harmed them, these theories are all premised on the notion that the Hospitals could not assert liens for the undiscounted rates in the first place. As detailed above, that is not the case. And, as above, there is no injury at all described by Plaintiffs arising from the purported procedural violation. *See Spokeo,* 578 U.S. at 341.

To demonstrate standing, Plaintiffs cannot merely tick off a list of abstract harms, remedy theories or purported violations; rather, they must allege specific facts showing how they were concretely affected. Plaintiffs' conclusory and generalized assertions of injury (*see, e.g.*, AOB-16–17, 25) are insufficient to confer standing.

### 2. None of Plaintiffs Purported Additional Theories of Liability Survive the Basis for Dismissal

Plaintiffs also claim that they asserted theories for relief that are unrelated to the Defendants placing liens on TPLs at undiscounted rates. Plaintiffs assert that the District Court "overlooked" their laundry list of issues. Moreover, like the vague list of purported "harms," nowhere in Plaintiffs' three page list of other theories do Plaintiffs explain how any of these theories establish an injury-in-fact, confer standing or require a reversal of the District Court. AOB-26-29. Indeed, all

Plaintiffs argue is that the District Court "overlooked" something. Plaintiffs argument should be rejected for that reason alone.

A review of each purportedly "overlooked" theory reveals that they are not distinct from the District Court's analysis regarding standing discussed above, invalid, or both.

Plaintiffs argue that the Hospitals' liens are invalid because MedEquity was not registered to do business in Montana. *See* AOB-27. Whether MedEquity was registered does not change the fact that Plaintiffs paid nothing for their medical care and have no right to force the Hospitals to accept certain rates. Further, bare procedural violations are insufficient to confer standing. *Spokeo*, 578 U.S. at 341.

Plaintiffs argue that the Hospitals fail to follow their own internal policies for billing and lien filing. AOB-27. First, there are no allegations in the SAC about "internal policies" regarding lien filing. Plaintiffs cite ER-153, but nothing on that page says anything about liens. Moreover, nothing in the quoted policy excerpts on ER-153 changes the fundamental facts establishing a lack of standing, *i.e.*, that Plaintiffs paid nothing, had no right to force the Hospitals to accept undiscounted rates, and the liens complained about are consistent with Montana law.

Plaintiffs argue that Defendants engaged in "deceptive and misleading practices about the amount of the liens and payment of the liens," including in violation of the FDCPA. AOB-27. Similarly, Plaintiffs argue that Defendants "misrepresented or concealed material facts" about the liens (AOB-27)—namely, that the "liens constitute valid, lawfully owed debts" when instead Defendants were "requir[ed]" to "accept the contract or regulatory rates." *See* ER-188. Again,

Plaintiffs' alleged claim is not distinct from the District Court's reasoning supporting dismissal and thus fails for the same reasons described above. Further undermining any purported harm, Plaintiffs concede that the liens and communications about them were sent to third parties who were being asked for payment—not Plaintiffs who were not asked for payment and never paid anything. *See* ER-162-66.

Plaintiffs argue that the liens are invalid because Defendants engaged in "balance billing" "or were paid twice for the same lien." AOB-28. Plaintiffs' own SAC confirms the opposite. In the "illustrative" example of Plaintiff Searsdodd, the SAC alleges that Benefis only accepted one payment for her medical treatment—from the TPL—and refunded the amount originally paid by Searsdodd's private insurance. ER-165, ¶ 56. Moreover, Plaintiffs were not billed anything nor did they pay anything. Thus, there were not "balance billed" anything. ER-163.

Plaintiffs argue that the liens were unsupported by any debt (AOB-28), apparently invoking *Morgan*, 403 S.W.3d 115. As the District Court held, *Morgan* is not the law in Montana and Plaintiffs offer no reason why it should apply here. ER-21-23.

Plaintiffs argue that the liens violated the "amount requirements under the law." AOB-28. Again, this goes to the heart of the District Court's analysis and fails for the reasons discussed at length above.

Plaintiffs argue that the liens violated notice requirements under Montana law, presumably because Defendants filed the liens against the TPLs, and not

Plaintiffs. AOB-28. Under Mont. Code Ann. § 71-3-1115(2), when, as here, a medical lien is payable only by an insurer, the lien need only be filed against that insurer. In other words, because Plaintiffs were not being asked to pay anything for their medical treatment and the liens were thus not asserted against them, Defendants did not need to serve notice on Plaintiffs.

Without any citation to authority, Plaintiffs argue that the liens violated lien priority and release requirements under Montana law. AOB-28. Plaintiffs do not identify what these violations are let alone detail how it gives them standing. As above, even if there was a statutory violation (which there was not) "a bare procedural violation, divorced from any concrete harm," does not "satisfy the injury-in-fact requirement of Article III." *See Spokeo,* 578 U.S. at 341.

Plaintiffs allege that Defendants have violated the FDCPA by "engaging in false, misleading and deceptive collection practices." AOB-28-29. The District Court directly addressed Plaintiffs' FDCPA claims. ER-25. *See Spokeo,* 578 U.S. at 341; *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (concluding that "an injury in law is not an injury in fact," and therefore "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation" have standing) (emphasis in original). And, as described above, the liens were authorized under Montana law.

Plaintiffs argue that Defendants "violate Medicare and Medicaid regulations, which have different standards." AOB-29. Plaintiffs fail to identify these "different standards" or articulate how Defendants violated them, and as *Estate of Donald,*

258 P.3d at 400, instructs, Defendants were in fact required to seek payment from TPLs for patients with government insurance.

Plaintiffs argue that Defendants' lien practices constitute an unlawful assignment of personal injury claims. AOB-29. As explained directly below, *see* Section VII(C)(3), *infra*, Plaintiffs do not allege that any personal injury claimant assigned any of its personal injury claims. This theory is thus entirely inapplicable.

Plaintiffs allege that Defendants' lien practices "deprive Plaintiffs of their first-party insurance benefits for which they have paid a separate premium." AOB-29. As the District Court explained, Plaintiffs "received the full benefits of their bargains under Montana law when their private health insurers or Medicare or Medicaid relived [*sic*] them of any obligation to make further payments to their medical providers." ER-26. Thus, the liens did not deprive Plaintiffs of any insurance benefits.

Finally, Plaintiffs argue that Defendants' lien practices "violate Plaintiffs' contractual and regulatory rights." AOB-29. Again, this issue is not distinct from the District Court's analysis. As described above, Plaintiffs have no property right in the delta between the undiscounted rate and the negotiated/government rate, and cannot claim any injury to a right they do not have. *See* Section VII(A)(2), *supra*.

To demonstrate standing, Plaintiffs must allege specific facts showing how they were concretely affected and injured-in-fact. Nothing in Plaintiffs' SAC or Opening Brief comes close to meeting these requirements.

**3.     The Liens Do Not Constitute An Assignment of Plaintiffs'**
**Personal Injury Claims**

In yet another argument not developed below, Plaintiffs contend that the
liens constitute an improper assignment of their personal injury claims in violation
of Montana law and public policy. Plaintiffs rest their argument on a single case—
*Northland Cas. Co. v. Mulroy,* No. CV 13-232-M-DLC, 2016 WL 1322428, at *1
(D. Mont. Mar. 31, 2016)—that has no bearing whatsoever on Plaintiffs'
allegations here. In *Northland*, plaintiff hired a contractor to build a log home. *Id*.
at *1. Plaintiff later discovered the wood was infested with beetles. *Id*. Plaintiff
made a claim to the contractor's insurance carrier, and litigation ensued between
plaintiff, the contractor and his company, and the insurer. *Id*. The contractor and
his company settled with plaintiff, assigning to plaintiff all claims against the
contractor's insurance company, including personal injury claims. *Id*.

Plaintiff then brought a third-party claim against the independent insurance
agency (Glacier) that procured insurance for the contractor, his company, and his
insurer, for negligence and misrepresentation/fraud. *Id*. at *2. Glacier moved for
summary judgment, arguing, in relevant part, that the assignment of personal
injury claims was invalid under Montana law. The court agreed, finding that
plaintiff's negligence and fraud claims were personal injury claims and therefore
not assignable. *Id*. *3.

*Northland* is plainly inapplicable here. The SAC does not allege that any
Plaintiff assigned their right to pursue personal injury claims to the Hospitals or
anyone else. Plaintiffs cite to no authority to suggest that placing a lien for

47

payment of medical services on insurance proceeds could fall within the definition of an assignment of a personal injury claim. Moreover, as a general rule, Montana public policy is prescribed by the legislature through its enactment of statutes. *Hardy v. Progressive Specialty Ins. Co.*, 67 P.3d 892, 989 (Mont. 2003) (citing *Duck Inn, Inc. v. Mont. St. Univ.*, 949 P.2d 1179, 1182 (Mont. 1997)). Thus, since Montana statutes authorize Defendants' liens, Plaintiffs' public policy argument misses the mark entirely.

### 4.    Plaintiffs Cannot Invoke the "Made Whole" Doctrine

At oral argument below and now on appeal, Plaintiffs appear to advance a theory of liability that gestures at Montana's "made whole" doctrine. Even interpreting Plaintiffs' argument in the most generous light, the doctrine does not apply here.

The Montana Supreme Court established the "made whole" doctrine in 1977 "to be applied in insurance subrogation cases." *See Swanson v. Hartford Ins. Co.*, 46 P.3d 584, 586-87 (Mont. 2002) (citing *Skauge v. Mt. States Tel. and Tel. Co.*, 565 P.2d 628 (Mont. 1977)). Under the doctrine, "when the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for his entire loss and any costs of recovery, including attorney's fees, before the insurer can assert its right of legal subrogation against the insured or the tort-feasor." *Van Orden v. United Servs. Auto. Ass'n*, 318 P.3d 1042, 1045 (Mont. 2014) (citing *Skauge,* 565 P.2d at 632). As a policy matter, "[w]hen the sum recovered by the Insured from the Tortfeasor is less than the total loss and thus either the Insured or the Insurer must to some extent go unpaid, the loss should be

48

borne by the insurer[,] for that is a risk the insured has paid it to assume." *Id*. (emphasis omitted).

None of the Defendants are insurers and insurance subrogation rights are not at issue in this case. Thus, as the District Court correctly concluded, Defendants' mere filing of a lien for the undiscounted amount of the medical services does not implicate the made whole doctrine. ER-26-27.

## 5. There Is No Factual Dispute About the "Reasonable Value" of the Hospitals' Services

Plaintiffs assert that dismissal was improper because there exist factual issues that cannot be resolved on the pleadings. Plaintiffs rely principally on Mont. Code Ann. § 71-3-1117 and *Meek v. Mont. Eighth Judicial Dist. Court*, 349 P.3d 493 (Mont. 2015) to assert that Montana law requires that the liens represent the "reasonable value of services." AOB-17. From this, they argue that there exists a factual issue as to what constitutes the "reasonable value" of the services the Hospitals provided, precluding dismissal. AOB-31–32. Neither authority is applicable here.

Section 71-3-1117 imposes liability on insurers or individuals who, after receiving notice of a medical lien, make payment to an entity other than the providers. In that instance, the insurer remains liable to the medical provider "for the reasonable value of the services." Mont. Code Ann. § 71-3-1117. Plaintiffs do not allege that a TPL made payments to an entity other than the provider. Moreover, Plaintiffs' claims are also premised on the Hospitals accepting payments from (or at rates commensurate with) health insurers or government

programs. That claim does not create a factual issue about whether a Hospital's undiscounted rates for a given service are reasonable.

*Meek* addressed the reasonable value of medical services as an evidentiary matter, in circumstances that are equally inapplicable. In *Meek*, a decedent's estate brought a survival and wrongful death action against defendants following a slip-and-fall accident. *Meek,* 349 P.3d at 494. The decedent was covered by Medicare and Blue Cross Blue Shield, which paid $70,711.26 of the $197,154.93 billed by her providers. The district court had determined that decedent had no obligation to pay any amount beyond the $70,711.26 that the insurers had already paid. *Id*.

One defendant moved *in limine* to limit the estate's medical expense recovery to the amounts actually paid by the insurers and to exclude evidence of the (excess) amounts the providers had billed. *Id*. The district court granted the motion and granted summary judgment against the estate, holding that because the estate had no liability exposure to the providers beyond what the insurers paid, the estate could only present evidence of the amounts actually paid. *Id*.

Plaintiff filed a writ of supervisory control challenging the order, and the Montana Supreme Court reversed, holding that the bills were admissible as "relevant evidence of issues such as the nature and severity of the injuries, and of the medical procedures or treatments that were required." *Id*. at 495. *Meek* explicitly declined to address what damages the plaintiff could recover in medical expenses (*id*.) instead addressing "the admissibility of evidence in a personal injury action against a tortfeasor" and "application of the collateral source statute, § 27–1–308, MCA." *Id*. at 496. *See also Gibson, supra,*, 499 P.3d at 1171 (explaining

that *Meek* "does not stand for a categorical rule that an injured tort victim may recover medical expenses written off by her provider.")[2]

Neither *Meek* nor Mont. Code Ann. § 71-3-1117 applies here and, as discussed in Section VII(A)(2), *supra*, Plaintiffs have no "right" to the negotiated rates under the Hospitals' preferred provider agreements with Plaintiffs' health insurers or under government programs. That is the issue presented here and it has nothing to do with the reasonableness of one rate or another. Plaintiffs cannot rely on these authorities to fabricate a factual issue about the "reasonable value" of the Hospitals' services where one does not exist.

Moreover, to the extent the "reasonable value" argument is valid at all (which it is not), it is not Plaintiffs' argument to make because it was the TPLs, not Plaintiffs, who were sent liens and bills to pay. The obligations in Section 71-3-1117 only apply to those parties who received liens and made payments to others. Plaintiffs concede they did not do either of these things.

---

[2] Plaintiffs' other cited authorities, many of which were decided under the laws of other states, similarly address whether chargemaster rates are "reasonable." *See In re N. Cypress Med. Ctr. Operating Co., Ltd*., 559 S.W.3d 128 (Tex. 2018) (decided under the Texas hospital lien statute, which Texas courts construe to require that hospital liens reflect reasonable rates); *Parkview Hosp., Inc. v. Frost ex rel. Riggs*, 52 N.E.3d 804 (Ind. Ct. App. 2016) (decided under the Indiana Hospital Lien Act, which allowed patients to contest liens and the reasonableness of charges); *Howard v. Willis-Knighton Med. Ctr.,* 924 So. 2d 1245 (La. Ct. App. 2006) (decided under the Louisiana hospital lien statute, which allowed hospitals to collect reasonable charges). But, as above, the "reasonableness" of the Hospitals' chargemaster rates are not at issue.

**D.**    **The District Court Applied the Correct Standard**

Plaintiffs make much of the District Court's citations to Federal Rule of Civil Procedure 12(b)(6) (*see* AOB-19-22, citing ER-9), arguing that the District Court used the wrong standard in dismissing the SAC for failure to establish standing. They attempt to cast the District Court's conclusion that "Montana law . . . does not prohibit [ ] the filing of medical liens that seek the full chargemaster rates as alleged in Plaintiffs' SAC" (ER-27) as a decision on the merits under Rule 12(b)(6) as opposed to a jurisdictional matter. AOB-19-22. Not only are Plaintiffs wrong in the description of the District Court's analysis, but dismissal under either Rule 12(b)(6) or Rule 12(b)(1) is correct.

The District Court unquestionably analyzed whether Plaintiffs had standing to pursue their claims and found they did not. *See* ER-9 ("The Court . . . determines that Plaintiffs lack standing to bring their claims."). And because "federal appellate courts . . . do[] not review lower courts' opinions, but their *judgments,*" *Jennings v. Stephens*, 574 U.S. 271, 277 (2015) (emphasis in original), the Court may affirm on any basis supported by the record. *Foster v. Wilson,* 504 F.3d 1046, 1050 (9th Cir. 2007).

Moreover, Plaintiffs' emphasis on the different standards under Rule 12(b)(1) and 12(b)(6) carries little force here where Defendants' jurisdictional attack was a facial one. *See Leite v. Crane Co.,* 749 F.3d 1117, 1121 (9th Cir. 2014) ("The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the

allegations are sufficient as a legal matter to invoke the court's jurisdiction."). Nor can Plaintiffs avoid a standing challenge by casting legal conclusions as factual ones. *See Lacano Invs., LLC v. Balash,* 765 F.3d 1068, 1071-72 (9th Cir. 2014) ("While we do accept all of the *factual* allegations in the complaint as true . . . we do not accept *legal conclusions* in the complaint as true, even if cast in the form of factual allegations.") (emphasis in original) (internal citations omitted). Thus, the District Court's citation to Rule 12(b)(6) is unremarkable.

Finally, even if the Rule 12(b)(6) standard were applied, it would also demand dismissal. The District Court properly concluded that the Plaintiffs were not harmed. Each of the causes of action brought by Plaintiffs requires causation and damages as elements, as Plaintiffs' SAC concedes. *See* ER-177, ¶ 81; ER-183, ¶ 93; ER-185-86, ¶ 104; ER-187, ¶ 110; ER-188, ¶ 115; ER-189, ¶ 124; ER-191, ¶ 129; ER-193, ¶ 137; ER-194, ¶ 142; ER-195, ¶ 150. Since that element is lacking from every claim, whether the Rule 12(b)(6) or Rule 12(b)(1) standards are applied is irrelevant as dismissal is appropriate under both standards. This Court should affirm. *See M & T Bank, supra*, 963 F.3d at 857.

**E.**     **The District Court Correctly Dismissed the SAC Without Leave to Amend**

Finally, Plaintiffs argue that the District Court erred in denying leave to amend their complaint for a third time. This Court reviews a denial of leave to amend for abuse of discretion. *Walker v. Beard*, 789 F.3d 1125, 1139 (9th Cir. 2015). "[A] dismissal with prejudice is appropriate, especially where it [is] plainly unlikely that the plaintiff [will be] able to cure [its] standing problem." *See*

*Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004) (internal citations omitted); *see also United Petro/Energy Corp. v. United States*, 846 F. Supp. 993, 997 (S.D. Fla. 1994) (dismissing plaintiff's claims with prejudice for lack of subject matter jurisdiction where amendment would be futile as the claims were barred by the Anti-Injunction Act).

Plaintiffs cannot change any of the facts or law that establish a lack of standing. It is undisputed that Plaintiffs paid nothing for their medical care. Montana law does not give Plaintiffs a right to dictate what the Hospitals can seek in payment from others or from whom they seek payment. And, the challenged lien practices are permitted by Montana statute. No amendment is going to change these matters. The District Court was correct to dismiss the SAC without leave to amend.

## VIII. CONCLUSION

For the reasons stated above, the Hospitals respectfully request that the District Court's order dismissing Plaintiffs' Second Amended Complaint without leave to amend be affirmed.

December 16, 2022                MANATT, PHELPS & PHILLIPS, LLP and
                                 MCLEAN & ASSOCIATES, PLLC


                                 */s/ Charles E. Weir*
                                 *Attorneys for Defendants-Appellees*
                                 Benefis Health System, Inc.,
                                 Benefis Hospitals, Inc., and
                                 Benefis Medical Group, Inc.

December 16, 2022                    UGRIN ALEXANDER ZADICK, P.C.

                                     */s/ Gary M. Zadick*
                                     *Attorneys for Defendant-Appellee*
                                     Kalispell Regional Medical Center, Inc.

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the typeface and other requirements of Federal Rule of Appellate Procedure 32(a) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word with a 14-point Times New Roman font and contains 11,650 words, exclusive of exempted sections, as counted by the Microsoft Word word-processing program used to generate this brief.

December 16, 2022          MANATT, PHELPS & PHILLIPS, LLP

                          */s/ Charles E. Weir*
                          *Attorneys for Defendants-Appellees*
                          Benefis Health System, Inc.,
                          Benefis Hospitals, Inc., and
                          Benefis Medical Group, Inc.


**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 16, 2022. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

                          */s/ Bess Hubbard*

401830105.6